# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ANTONIO AMARAL, | Case No. 1:18-cv-01041-JLT (HC) |
|---|---|
| Petitioner, | ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE |
| v. | FINDINGS AND RECOMMENDATION TO SUMMARILY DISMISS PETITION FOR WRIT OF HABEAS CORPUS |
| DUBEE, Warden, | |
| Respondent. | [21-DAY OBJECTION DEADLINE] |

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at Kern Valley State Prison. In this habeas petition, he challenges a guilty finding in a disciplinary hearing held on July 25, 2017, in which he was found guilty of possession of a deadly weapon while at Corcoran State Prison for which he was assessed a loss of 360 days of good time credit. Review of the action demonstrates that Petitioner is not entitled to habeas relief. Therefore, the Court will recommend the petition be **SUMMARILY DISMISSED**.

## DISCUSSION

A. <u>Preliminary Review of Petition</u>

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases. The Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ

1

of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Herbst v. Cook, 260 F.3d 1039 (9th Cir. 2001).

B.    Facts[1]

On June 19, 2017, Investigative Services Unit Sergeant Morelock and Officer R. Adame at Corcoran State Prison conducted a cell search of unit 3C04-239 which was occupied by Petitioner and inmate Valle. Petitioner was not present during the search. During the search, Morelock discovered a flattened piece of cellophane under the lower bunk area which contained black tar heroin. Morelock and Adame then noticed that the security screws which secured the light fixture to the ceiling appeared to have been tampered with and were loose. Utilizing a special tool set, Morelock removed the security screws and lowered the light fixture. The light fixture is commonly used by inmates for hiding or securing contraband. Morelock discovered three cellular phones secured to the inner frame of the fixture. He and Adame continued to disassemble the fixture and removed the cover portion which houses the electronic ballast. Inside the cover portion the officers discovered two inmate-manufactured stabbing weapons. One consisted of a flat metal stalk sharpened to a point at one end and the other end having a handle made from clear cellophane. The second consisted of an altered nail which had been sharpened at the tip. In addition, officers discovered a security bit in the cell.

C.    Procedural History

On June 27, 2017, Petitioner was served with a copy of a rules violation report for possession of a deadly weapon. (Doc. No. 1 at 16.) On that same date, he was assigned an investigative employee. (Doc. No. 1 at 16.) The employee investigated, completed his report of the incident, and provided Petitioner with a copy of his report. (Doc. No. 1 at 16-17.)

On July 25, 2017, a disciplinary hearing was conducted. (Doc. No. 1 at 16.) Petitioner entered a plea of not guilty and provided the following statement: "I was not aware of, and did not have any knowledge of any contraband in the light fixtures and wall fixtures of the Cell #239

---

[1] The facts are derived from "Crime/Incident Reports" attached by Petitioner to his petition. (Doc. No. 1, pp. 29-33.)

2

of 3C Yard, Building 4. And I did not have any accessibility in opening the light fixtures and/or the fixtures in that cell. And don't know what it would take to even open these fixtures." (Doc. No. 1 at 26.) Upon consideration of the evidence, the hearing officer concluded that Petitioner was guilty of possession of a deadly weapon. (Doc. No. 1 at p. 20.)

Petitioner filed administrative appeals, and the appeals were denied at all levels thereby exhausting all administrative remedies. (Doc. No. 1 at pp. 7-10.) It appears that he has not sought relief in any state court.

D. AEDPA Standard

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under AEDPA, a petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable

3

application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

E.  Legal Standard in Prison Disciplinary Proceedings

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-455 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due

process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455 (citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)).

F. Analysis

Petitioner does not dispute that he received the first three due process protections. Even if he did dispute this, it is clear the requirements were met. He was provided advance written notice of the July 25, 2017, hearing on June 27, 2017. (Doc. No. 1 at 16.) He was also allowed to call witnesses and present documentary evidence. He was assigned an investigative employee who questioned witnesses on Petitioner's behalf and presented the responses to the hearing officer. (Doc. No. 1 at 26-28.) Finally, he was provided a written statement by the fact finder when he was issued a copy of the disciplinary hearing report following the hearing. (Doc. No. 1 at 11-28, 43-46.)

Petitioner claims that he was found guilty based on false or fabricated evidence. He states that he asked the officers where and how the security bit was discovered but he was not provided any answers. He alleges the security bit was fabricated. He further contends that the contraband must have been placed in the fixture by inmates who previously occupied the cell. However, the Court is not tasked with "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. In this case, the officers' statements, that they found two deadly stabbing weapons in the light fixture and a security bit to remove the screws in the cell, constitute at least "some evidence" to support the guilty finding.

Accordingly, Petitioner fails to demonstrate that either his procedural or substantive due process rights were violated. Wolff, 418 U.S. at 564. The petition should be summarily dismissed

for failure to state a cognizable claim.

G. <u>Exhaustion</u>

A petitioner who is in state custody and proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. <u>Duncan</u>, 513 U.S. at 365 (legal basis); <u>Kenney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. <u>Duncan</u>, 513 U.S. at 365-66.

Petitioner does not indicate that he has sought relief in any state court. Because Petitioner has not presented his claims for federal relief to the California Supreme Court, the Court must dismiss the petition. <u>Raspberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006); <u>Jiminez v. Rice</u>, 276 F.3d 478, 481 (9th Cir. 2001).

**ORDER**

The Clerk of Court is DIRECTED to assign a District Judge to the case.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the habeas corpus petition be SUMMARILY DISMISSED WITH PREJUDICE.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy, Petitioner may file written

6

| | |
|---|---|
| 1 | objections with the Court. Such a document should be captioned "Objections to Magistrate |
| 2 | Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's |
| 3 | ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Failure to file objections within the specified time |
| 4 | may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th |
| 5 | Cir. 1991). |

IT IS SO ORDERED.

Dated: **August 15, 2018**            /s/ **Jennifer L. Thurston**
                                      UNITED STATES MAGISTRATE JUDGE